## MAILANDER v. CONTINENTAL STATE BANK OF BECKVILLE. (No. 3601.)

Court of Civil Appeals of Texas. Texarkana. Nov. 20, 1928.

Rehearing Denied Nov. 29, 1928.

616

See, also, 277 S. W. 232.

Sleeper, Boynton & Kendall, of Waco, and Sam T. Holt, of Carthage, for appellant.

Woolworth & Baker, of Carthage, for appellee.

LEVY, J. (after stating the facts as above). ■ The appellant agreed to take down and reset the bank fixtures of the appellee, and to provide the new material necessary to adapt the fixtures to the alterations, for the "actual cost plus twenty per cent." of doing the job. The appellant, in making up the actual cost of the job, in addition to "plus twenty per cent.," charged the appellee with a certain proportion of the ordinary expenses of operating his factory and business, denominated "overhead expense." The question to be determined is whether the appellant was entitled to charge the appellee for the item of "overhead expense," in addition to the amounts expended directly upon the alteration of the fixtures for labor and material.

In view of the work to be done and the relations of the parties to the work, the object of the provision "actual cost plus twenty per cent." was, it seems, to include in the accounting between them only the money actually paid for necessary labor and material in directly effecting the alteration of the fixtures, with "twenty per cent." added as compensation to the plaintiff. The negotiations of the parties confirm the conclusion that they intended, by "actual cost" used in the agreement, to refer to the sum actually paid for necessary labor and material in doing the particular job, and in no wise inclusive of any charge for overhead expenses of the appellant's factory at Waco. The particular job does not appear to have been considered as a "factory job," and as such strictly differing from a simple contract to perform labor and furnish materials. The fixtures in the bank were merely to be taken down and set conformably to a different plan. The dismantling and setting up of the fixtures was, as understood, the ordinary practical work of an expert mechanic to be performed by him only at the place of work, the bank building. The appellant was merely to provide that expert workman from among the workmen of his factory, and be paid the value of his labor and his expenses of travel and board. New material, "if any were necessary," in setting out the fixtures, was to be shipped from the factory to the place of work, and to be paid for as in case of ordinary sale of such material. It was contemplated that in case new material was necessary to be used, only a very little would be required. And only a desk extension, of the admitted cost of $26.95, was needed and used besides the copper wire, plaster, and putty, of the cost of $6.30. In fact, the situation and negotiations of the parties prior to and up to the time of the agreement indicate that they mutually considered all the cost of doing the job would consist substantially of the money paid out for labor of the expert mechanic and his traveling and boarding expenses, with "twenty per cent." added to the aggregate amount as compensation to the contractor. No mention was made during the negotiations concerning overhead expenses being in the estimate of "actual cost" to the appellant.

It is manifest, we conclude, that it could not have been mutually intended by the parties that the appellant could agree to make the alteration required, and then insist, merely because he operated a factory and sent an expert mechanic, that the overhead expenses should be reckoned as a part of the actual cost of directly effecting the alteration of the fixtures. In the nature of things the overhead expense in running the factory was treated as distinctly apart from the real cost of doing the job at the bank. Such expenses were in no wise necessary to adapt the existing fixtures to the rearrangement in the bank. The overhead expense would have been incurred whether the present job had been done or not. It is believed that by their agreement the parties have precluded themselves from showing anything inconsistent with the natural and ordinary meaning of the words "actual cost plus twenty per cent." The use of the two words "actual cost" emphasizes the meaning of the parties, of excluding in the accounting between them any idea of profit, and everything except what fairly might be reckoned as a part of the real cost of directly effecting the alteration of the fixtures. The express limitation to pay further or added expense, profit, or compensation was that of "twenty per cent." The "cost plus basis," which appellant testified he relied upon as authorizing him to include overhead expense, was not the terms of the present agreement. The case is quite different from a contract by a factory to sell and install, in the first instance, its products.

■ As to whether the workman actually worked 83 hours or less became a pure matter of fact for the jury to determine. The evidence in that respect was sufficiently conflicting to require the court to pass the decision to the jury.

The judgment is affirmed.